**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| SEAN SHEFFLER, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:23-cv-01206-SEB-TAB |
| vs. | |
| ACTIVATE HEALTHCARE, LLC and EVERSIDE HEALTH, LLC, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Sean Sheffler ("Representative Plaintiff" or "Plaintiff") submits this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

This case arises from a data breach that Plaintiff alleges affected Defendants' IT network, compromising and potentially compromising the Sensitive Personal Information ("SPI")[2] Plaintiff and Settlement Class Members.

---

[1] While Defendants do not oppose the relief sought in this motion, Defendants dispute Plaintiff's characterization of the facts and conclusions in this Motion.

[2] Defined as ""patient names, dates of birth, address, Social Security number, driver's license number, and clinical information, such as provider name, date of service, and/or diagnosis" in Plaintiff's Third Amended Complaint ("Compl."), ECF No. 38, ¶ 3.

## II.    CASE SUMMARY

### A.    The Data Incident

Defendants Activate Healthcare, LLC and Everside Health, LLC ("Defendants") are healthcare companies that serve a variety of healthcare-related functions for both employers and unions, including drug screenings. *See* Compl. ¶¶ 1, 19, 20. Plaintiff and members of the proposed class are employees, prospective employees, and union members who used Defendants' services, often at the direction of their employers or unions. *Id.* at ¶ 73. In its ordinary course of business, Defendants collect customers' SPI. *Id.* at ¶ 23. Plaintiff alleges that Defendants failed to adequately protect his SPI and the SPI of the Class. *Id.* at 9 ¶¶ 28-36.

In April 2023, Defendants discovered that an unauthorized person had gained access to its database(s) and exfiltrated the SPI of approximately 113,872 individuals. *Id.* at ¶¶ 2, 24. Plaintiff believes, due to repeated calls from scammers and other individuals attempting to solicit money from him that this information was transmitted to others via the dark web. *Id.* at ¶ 70.

### B.    Procedural Posture

Plaintiff filed his initial complaint on July 8, 2023. *See* ECF No. 1. As of December 7, 2023, the Parties had fully briefed Defendant Activate Healthcare, LLC's motion to dismiss. *See* ECF Nos. 28, 29, 31, and 34. On April 11, 2024, the Parties[3] conducted a mediation before Bruce Friedman, Esq. of JAMS.

Plaintiff alleges five claims for relief: (i) negligence; (ii) breach of implied contract; (iii) breach of third-party beneficiary of contract; (iv) bailment; and (v) unjust enrichment. These

---

[3] Parties refers to Plaintiff and Defendants collectively.

claims are asserted on behalf of a nationwide class. *Id.* at ¶ 22. The Complaint[4] also sought certification of a single national class as well as state subclasses. *Id.* at ¶¶ 83-147.

Plaintiff also sought equitable relief enjoining Defendants from engaging in the wrongful conduct complained of and compelling Defendants to utilize appropriate methods to protect the interests of the Class. *Id.* at Prayer for Relief. Finally, Plaintiff sought an award of actual, compensatory, and statutory damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper. *Id.*

### C.    History of Negotiations

After meeting and conferring regarding the potential for early settlement, the Parties agreed to mediate the case before Bruce Friedman, Esq. Mr. Friedman experienced and respected JAMS mediator with extensive experience in class action mediation generally and data breach mediations in particular. The mediation proceeded via ZOOM Video Conference on April 11, 2024. After a full day of arms-length negotiations, and significant exchange of information through Mr. Anderson, the Parties were able to reach an agreement.

On April 23, 2024, the Parties filed a Joint Motion to Stay with the Court notifying the Court of a settlement in principle. ECF No. 36. Over the next several weeks, the Parties diligently negotiated, drafted, and finalized the settlement agreement and notice forms, and came to an agreement on a claims process and administrator. The Settlement Agreement was finalized and signed by the Parties in July 2024.

---

[4] Complaint refers to Plaintiff's third amended complaint filed on June 3, 2024. *See* ECF No. 38.

III.     **SUMMARY OF SETTLEMENT**

A.       **Settlement Benefits**

The settlement negotiated on behalf of the Class provides for the creation of a $550,000 non-reversionary Settlement Fund. The Settlement provides exceptional relief for the Settlement Class: it will make available $550,000 available for monetary claims, attorneys' fees and costs, costs of settlement administration and Plaintiff's service award. *See* Settlement Agreement ("SA"), Ex. 1 at 10.

The Settlement Class is defined as follows:

**The Settlement Class:**

"[A]ll individuals notified that their SPI was potentially impacted in the Data Incident at issue in the CAC. Defendants' officers and directors are excluded from the Settlement Class, as well as (i) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (ii) the judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this Settlement; and (iii) any other person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge." SA at 8.

1.       **Monetary Relief**

The monetary relief provided for by the Settlement Agreement is intentionally kept as simple as possible so as to minimize claims administration costs. All members of the Settlement Class may file for reimbursement of documented out-of-pocket expenses up to $250, including credit monitoring or identity theft insurance purchased after June 23, 2023. SA at 16. Additionally, whatever portion of the Settlement Fund remains following payment of attorneys' fees, costs, claims administration and Plaintiff's service award shall be divided equally on a *pro rata* basis between all Settlement Class Members who file timely claims for a cash payment benefit, whether or not they have sought reimbursement for out-of-pocket expenses. *Id.* At this stage the Parties

estimate that payment at approximately $50.00, though Plaintiff will update that number at the filing of his Motion for Final Approval.

## 2. Release

In exchange for the relief provided, Settlement Class Members will release their claims against Defendants. The release in this case is tailored to the claims that have been plead or could have been plead in this case related to the Data Incident. *Id*. at 33. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendants and their affiliates related to the Data Incident and/or the recordkeeping or data security practices in place at the time of the Data Incident. *Id.*

## B. The Notice and Claims Process

## 1. Notice

The Parties agreed to use Analytics as the Claims Administrator in this case.

The proposed Notice Plan requires the Summary Notice to be sent directly to each individual Settlement Class Member via US Mail. *Id.* at 20. Within thirty (30) days of Preliminary Approval, the Claims Administrator shall cause the Summary Notice to be mailed by first class mail all Settlement Class Members. *Id.*

The Claims Administrator will also establish a dedicated settlement website and will maintain and update the website throughout the Claims Period, with the forms of Summary Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, copies of the motion for final approval of the Class Settlement Agreement, and the motion for Attorneys' Fees and Expenses Award and Service Award. *Id.* at 21-22. While not required under the Settlement Agreement, the Claims Administrator will also make a toll-free help line available with

an interactive voice response, FAQs, and an option to speak to a live operator to provide Settlement Class Members with additional information about the Settlement.

### 2. Claims

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. *Id.* at 16-18. The Claim Form is written in plain language to facilitate Settlement Class Members' ease in completing it. Class Members will have until ninety (90) days after Notice is issued to complete and submit their Claim Form to the Claims Administrator, either by mail or online. *Id.* at 4. Further, Settlement Class Members will have sixty (60) days after Notice is issued to opt-out or object. *Id.* at 16-17.

The Claims Administrator will be responsible for reviewing the Claim Forms and determining if they are complete and valid, and for completing the Settlement Claims calculations. *Id.* at 17. Included in its responsibilities is determining whether a claimant is a Settlement Class Member and whether the Settlement Class Member has submitted all required information. *Id.* at 17. Where a Claim Form is incomplete, the Claims Administrator will request additional information and give the claimant twenty-one (21) days to cure any defect(s) before rejecting a Settlement Claim. *Id.* at 17-18.

The Claims Administrator was chosen as part of a competitive bidding process which sought four different bids. Analytics LLC was the lowest bidder. Following selection, Analytics LLC agreed to cap its fees at no more than $91,242.00.

### 3. Payment

The Claims Administrator will mail Award checks or send funds electronically (in an electronic payment format recommended by the Claims Administrator, such as PayPal, and

agreed-upon by the parties) for Approved Claims within the later of fourteen (14) days after the Effective Date or as soon as possible after disputed claims have been resolved. *Id.* at 18. Award checks shall be valid for a period of one hundred eighty (180) days from issuance, and shall state, in words or substance that the check must be cashed within ninety (90) days, after which time it will become void. *Id.*

If there is any balance remaining in the Settlement Fund ninety (90) days after the Claims Administrator completes the process for stopping payment on any Award checks that remain uncashed, the Claims Administrator will either, on the agreement of the Parties, issue a secondary distribution or (depending on the size of the residual fund) remit the residue to a *cy pres* recipient agreed upon by the Parties and to be approved by the Court.

### 4. Requests for Exclusion and Objections

Settlement Class Members will have up to and including sixty (60) days following the date Notice is issued to object to or to submit a request for exclusion from the Settlement. *Id.* at 16-17. Similar to the timing of the claims process, the timing with regard to objections and requests for exclusion is structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. *Id*. at 26.

A Settlement Class Member who wishes to exclude him/herself from the Settlement must individually sign and timely mail a written Request for Exclusion to the address designated by the Claims Administrator. *Id.* at 22-25. All persons who Opt-Out from the Settlement Class shall not receive any benefits of or be bound by the terms of this Class Settlement Agreement. *Id.* at 23. All persons falling within the definition of the Settlement Class who do not Opt-Out shall be bound

by the terms this Class Settlement Agreement and the Final Approval Order entered thereon. *Id.* at 8-9.

Any Settlement Class Member who wishes to object shall file notice of his/her intention to do so including: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, (iii) a statement of the legal and factual basis for the objection, (iv) the identity of any counsel representing the objector; (v) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying that counsel; (vi) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objections and any documents to be presented or considered; (vii) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through a lawyer) has filed an objection to any proposed class action settlement within the last three (3) years; and (b) a list, by case number, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative and (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (if any). *Id.* at 24.

## C.  Fees, Costs, and Service Awards

The Settlement Agreement calls for a reasonable service award to the Representative Plaintiff in the amount of $5,000. *Id.* at 26. The Service Award is meant to compensate Plaintiff for his efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout the mediation and settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions.

After agreeing to the terms of the settlement on behalf of the Class, counsel for Plaintiff negotiated his fees and costs separate from the benefit to Settlement Class Members. Counsel for Plaintiff may seek attorneys' fees in an amount not to exceed one-third of the Settlement Fund **after administration costs**. *Id.* at 26. Counsel for Plaintiff may also seek reimbursement of reasonable expenses incurred in prosecuting the litigation. *Id.*

Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiff's Service Awards prior to filing the Motion for Final Approval of Class Action Settlement, and prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement. *Id.*

## IV.    ARGUMENT

In determining whether to preliminarily approve a class action settlement, courts undertake two essential inquiries. First, they conduct an independent class certification analysis, giving heightened attention to the requirements of Rule 23 given the parties' non-adversarial nature. *Lechuga v. Elite Engineering*, 559 F. Supp. 3d 736, 741 (N.D. Ill. 2021) (quoting *In re National Collegiate Athletic Ass'n Student Athlete Concussion Inj. Litig.*, 314 F.R.D. 590, 588 (N.D. Ill. 2016)) (internal quotations omitted). Then, Courts examine the settlement agreement to determine if it is within the "range of possible approval."

### A.    The Settlement Class Should Be Certified for Settlement Purposes

Plaintiff here seeks certification of a Settlement Class consisting of "All natural persons residing in the United States whose SPI was compromised in the Data Breach announced by Defendants on or about June 23, 2023." Compl. ¶ 73.

The *Manual for Complex Litigation (Fourth)* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria[.]" § 21.632.

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a national basis—including the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see also*, *e.g.*, *In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys.,*

*Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case should be similarly certified.

### 1. The Proposed Class Is Sufficiently Numerous

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See Savanna Group, Inc. v. Trynex, Inc.*, 2013 WL 66181, *4 (N.D. Ill. Jan. 4, 2013). Here, Defendants estimate that approximately 113,872 individuals were impacted or potentially impacted by the Data Incident. Joinder, therefore, is impracticable, and the class thus easily satisfies Rule 23's numerosity requirement. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018) (class of 40 or more is sufficient); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002).

### 2. Questions of Law and Fact Are Common to The Members of The Settlement Class

Commonality is satisfied where common questions are capable of generating "common answers apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The common questions "need not address every aspect of the plaintiffs' claims," but they "must drive the resolution of the litigation." *Phillips v. Sheriff of Cook County*, 828 F.3d 541, 553 (7th Cir. 2016) (internal quotations omitted). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2556.

Here, commonality is satisfied because the "circumstances of each particular class member . . . retain a common core of factual or legal issues with the rest of the class." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (citations and quotations omitted). Plaintiff's claims center on whether Defendants failed to adequately safeguard the records of Plaintiff and other Settlement Class Members. Defendants' data security safeguards were common

across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- whether Defendants had a legal duty to adequately protect Plaintiff's and the Class Members' information;

- whether Defendants breached their legal duty by failing to adequately protect Plaintiff's and Class Members' information;

- whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class Members' payment information.

These common questions, and others alleged by Plaintiff in his operative Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiff has met the commonality requirement of Rule 23.

### 3. Plaintiff's Claims and Defenses Are Typical of the Class

"Rule 23(a) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transportation Sys., Inc.*, 2016 WL 7426134, at *2 (N.D. Ill. Dec. 23, 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims are based on the same legal theory." *Chicago Teachers Union, Local 1 v. Board of Educ. of the City of Chicago*, 307 F.R.D. 475, 481 (N.D. Ill. 2015) (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, the claims of Plaintiff and all class members arise out of the same course of conduct—that Defendants collected and maintained what Plaintiff considers to be Sensitive Personal Information, which was subsequently potentially exposed in the Data Incident—and assert the same theories of liability. As a result, the typicality requirement is satisfied.

### 4. The Adequacy Requirement Is Satisfied

Rule 23(a) requires that the representative parties fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(4). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Plaintiff and proposed class counsel here have adequately represented the class. There is no conflict between Plaintiff and the settlement class members. Plaintiff was allegedly harmed in the same way as all class members when Defendants collected and allegedly failed to protect their private and payment information. In light of this common injury, the named Plaintiff has every incentive to vigorously pursue the class claims. Plaintiff agreed to undertake the responsibilities of serving as a class representative, and has sworn that he will continue to act in the class members' best interests. Further, counsel for Plaintiff has more than fifteen years of experience as a class action litigator and is well suited to advocate on behalf of the class. *See* Ex. B., Firm Resume of Wolf Haldenstein Adler Freeman & Herz LLP. Thus, the requirements of Rule 23(a) are satisfied.

### 5. Because Common Issues Predominate over Individualized Ones, Class Treatment Is Superior

The predominance analysis under Rule 23(b)(3) "focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive . . . ." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 894-95 (N.D. Cal. 2015) (quoting *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013)). "When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the

litigation." *Nicholson v. UTI Worldwide, Inc*., No. 3:09-cv-722-JPG-DGW, 2011 WL 1775726, at *7 (S.D. Ill. May 10, 2011) (citation omitted). Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Here common issues such as those discussed above predominate over individualized ones.

A class action is superior under Rule 23(b)(3) because it represents the only realistic means through which Class members may obtain relief in this case for Defendants' alleged failure to protect their sensitive personal information. *See, e.g.*, *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996) (explaining that a class action may be superior where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency"). Even assuming class members could recover all possible damages, they nonetheless would lack an incentive to bring their own cases given the high expert costs involved in litigating a case such as this concerning complex technology. *Mullins v. Premier Nutrition Corp*., No. 13-CV-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016) ("Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution.") (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1023 (9th Cir. 1998)).

## B.      The Terms of The Settlement Are Fair And Reasonable and Warrant Preliminary Approval

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses

of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) (citing *In re AT & T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. at 346) (quoting *Armstrong*, 616 F.3d at 314). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id*. "If the court preliminarily approves the settlement, the class members are notified." *Id*.

Rule 23—and particularly the portions thereof dealing with settlement—was amended in December 2018. The first step in the amended process is a preliminary fairness determination. Specifically, counsel submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This is so the Court may make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" Manual for Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11.25 (4th ed. 2002).

The new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Even since the amendments to Rule 23 courts in the Seventh Circuit have continued to examine settlement agreements in light of five specific factors: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among [a]ffected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Lechuga v. Elite Engineering*, 559 F. Supp. 3d 736, 744 (N.D. Ill., 2021), quoting *In re AT & T Mobility Wireless*, 270 F.R.D. 330, 346 (7th Cir. 1998), citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006).

If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*; Fed. R. Civ. P. 23(e)(1)(B) (2018).

Plaintiff will examine the Settlement under both the Rule 23 and the traditional Seventh Circuit factors. Should the Court grant preliminary approval, the second step in the class action approval process is a final fairness hearing. Fed. R. Civ. P. (e)(2) (2018); *also* Manual for Complex Litigation, § 21.633-34; *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members."). As explained below, consideration of these factors supports preliminarily approving the Settlement and issuing notice.

### 1.     The Settlement Meets The Requirements of The Rule 23 Factors

#### a.     *The Class Representative and Class Counsel Have Adequately Represented The Class*

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). This matter is no exception.

Here, as discussed above, the favorable terms of the Settlement itself speak to the adequacy of Plaintiff and the proposed Class Counsel. The Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation.

The culmination of that process led to an agreement by the Parties to mediate the case with respected mediator Bruce Friedman, Esq. of JAMS. Prior to filing and during the initial stages of the case, Class counsel conducted substantial investigation into the strengths and weaknesses of Plaintiff's claims. During mediation, the Parties exchanged additional information though Mr. Friedman, allowing the Parties to fully assess and evaluate the claims and defenses at issue. As such, the parties had sufficient information to place value on their respective positions in this case.

In addition, the adequacy of representation requirement is satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Here, the Plaintiff's claims are aligned with the claims of the other class members. In particular, Plaintiff, like all class members, is an individual whose sensitive personal information compromised and exfiltrated in the Data Incident. He thus has every incentive to vigorously pursue the claims of the class, as he has done to date by remaining actively involved in this matter since its inception, participating in the pre-suit litigation process, and involving himself in the settlement process. Further, Plaintiff retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular.

In a case where experienced counsel represent the class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 792; *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own

judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, Plaintiff's counsel believe that the parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the class. Plaintiff's counsel also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to trial.

### b. The Settlement Was Negotiated at Arm's-Length By Vigorous Advocates, and There Has Been No Fraud Or Collusion.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), report and recommendation adopted, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011) ("the involvement of an experienced mediator is a further protection for the class, preventing potential collusion"); *Wright v. Nationstar Mortgage LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (similar).[5]

Here, the Agreement resulted from good faith, arms'-length settlement negotiations, including an in-person mediation session with respected mediator Bruce Friedman, Esq. At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. Accordingly, it is clear that the parties negotiated their settlement at arm's-length and absent any fraud or collusion. *See, e.g., Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *1 (N.D. Ill. Mar. 2, 2017) (granting preliminary approval to privacy settlement

---

[5] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

resolved with the assistance of a mediator); *Steele*, 2011 WL 13266350, at *4 (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by an experienced mediator); *Wright*, 2016 WL 4505169, at * 11 (finding no evidence of fraud or collusion where the parties participated in mediation).

### c. The Settlement Provides Substantial Relief for The Class.

The relief provided by the Settlement Agreement—in the form of both significant monetary compensation and equitable relief—is substantial taking into account the costs, risks, and delay of trial and appeal; the effectiveness of the proposed method of distribution; and the terms of proposed attorneys' fees (which will be further detailed in Plaintiff's petition for fees which will be filed separately).

The Settlement provides for a non-reversionary Settlement Fund of 550,000 for Plaintiff and Settlement Class Members to receive compensation for both out-of-pocket losses as well as an additional cash component currently estimated at $50.

### i. Diverse And Substantial Legal and Factual Risks Weigh in Favor of Settlement.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. at 347.

While Plaintiff strongly believes in his claims, Plaintiff understands that Defendants assert a number of potentially case-dispositive defenses. Continued litigation is likely to be complex, lengthy, and expensive. Although Plaintiff is confident in the merits of his claims, the risks

discussed above cannot be disregarded. Aside from the potential that either side will lose at trial, the Plaintiff anticipates incurring substantial additional costs in pursuing this litigation further. Should litigation continue, Plaintiff would potentially need to engage in costly and complex discovery, respond to a motion for summary judgement, and both gain and maintain certification of the class. The level of additional costs would significantly increase as Plaintiff began his preparations for the certification argument and if successful, a near inevitable interlocutory appeal attempt. As at least one court has found, because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig*., 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). While Plaintiff disputes such defenses, it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits . . ., the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright v. Nationstar Mortg*. LLC, 2016 U.S. Dist. LEXIS 115729 at *39 (N.D. Ill., Aug. 29, 2016).

### ii.    The Method of Providing Relief Is Effective and Treats All Members of The Class Fairly.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member relief: cash payments. Cash Awards will be distributed based on the claims submitted by Settlement Class Members. To make a claim, Class Members need only fill out and submit their Claim Form to the Settlement Administrator. Upon final approval, the Claims Administrator will mail Award checks or send funds electronically (in an electronic payment format recommended by the Claims Administrator, such as PayPal, and agreed-upon by the parties) for Approved Claims within the later of fourteen (14) days after the Effective Date or as soon as possible (for disputed claims) after those disputed claims have been resolved. Accordingly, all Settlement Class Members will receive the same cash award and almost all at the same time. For these reasons, the settlement relief is both effective and treats all members of the Class fairly.

### iii. The Proposed Award of Attorneys' Fees Is Fair and Reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel will seek an award of one-third of the settlement fund after the costs of administration. This amount is below other approved class settlements, including privacy class settlements. *E.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (awarding 36% of net settlement fund in class settlement); *Martin v. JTH Tax, Inc.*, No. 13-cv-6923, Dkt. 85 (N.D. Ill. Sept. 16, 2015) (awarding 38 % of net settlement fund in class settlement); *Kusinski v. Macneil Auto. Prod. Ltd.*, No. 17-CV-3618, 2018 WL 3814303, at *1 (N.D. Ill. Aug. 9, 2018) ("The Court authorizes 1/3 of the Gross Settlement Fund"). Plaintiff's counsel achieved an excellent result for the Class after undertaking substantial risk in bringing novel privacy claims to prosecute this action on a pure contingency basis, and they should be fairly compensated.

Prior to final approval, Plaintiff's counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Class Notice.

Accordingly, this factor weighs in favor or preliminary approval.

### iv. There Are No Additional Agreements Required to Be Identified Under Rule 23(E)(3).

Because there are no additional agreements that require disclosure under Rule 23(e)(3), this factor also weighs in favor of approval.

### d. The Proposed Settlement Treats Settlement Class Members Equitably to Each Other.

Here, the proposed Settlement does not improperly discriminate between any segments of the class, as all Settlement Class Members are entitled to the same relief respectively. All Settlement Class Members have the opportunity to submit a claim. Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, while Plaintiff will be seeking a $5,000 award for his services on behalf of the class, this award is less than one percent of the total Settlement Fund.

Accordingly, this factor also weighs in favor of preliminary approval.

### 2. Other Factors Considered by Seventh Circuit Courts Weigh in Favor of Preliminary Approval

The factors considered by Seventh Circuit Courts prior to the amendment of Rule 23, and still considered by those Courts today, also weigh in favor of final approval.

*First*, the terms of the settlement compare favorably to the strength of Plaintiff's case. Here, although Plaintiff is confident in the strength of his claims, continued litigation with Defendants presents significant risks and costs—the most obvious risks including facing a motion to dismiss

and obtaining and maintaining certification. Furthermore, "[e]ven if Plaintiff were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.' " *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010), quoting *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *See id*. at 582. Thus, this factor weighs in favor of preliminary approval.

*Second*, continued litigation is likely to be complex, lengthy, and expensive. Although Plaintiff is confident in the merits of his claims, the risks discussed above cannot be disregarded. Aside from the potential that either side will lose at trial, the Plaintiff anticipates incurring substantial additional costs in pursuing this litigation further. Should litigation continue, Plaintiff would likely need to defeat a motion to dismiss, counter a later motion for summary judgment, and both gain and maintain certification of the class. The level of additional costs would significantly increase as Plaintiff began his preparations for the certification argument and if successful, a near inevitable interlocutory appeal attempt. Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec.*

*Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Accordingly, this factor also weighs in favor of preliminary approval.

*Third*, while no opposition to the Settlement is currently known, this factor is better examined after notice has been issued to the Class, and thus does not weigh either for or against preliminary approval of the Settlement.

*Fourth*, competent counsel with extensive experience in data breach litigation support the Settlement. The opinion of counsel weighs heavily in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement Agreement. Courts are "'entitled to rely heavily on the opinion of competent counsel,'" *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982). Thus this factor also weighs in favor of preliminary approval.

*And fifth*, as discussed above, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation and had completed an extensive investigation of the relevant claims and defenses. Accordingly, this factor also weighs in favor of preliminary approval,

### C. The Proposed Class Notice Should Be Approved

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As explained by the United States Supreme Court, due process requires that the notice be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections'" as well as "'describe the action and the plaintiffs' rights in it.'" *Sabon, Inc.*, 2016 IL App (2d) 150236, ¶ 36 (citing *Phillips Petroleum Co. v. Shuts*, 472 U.S. 797, 812 (1985)).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the Manual for Complex Litigation. *See* Exs. 1-A–1-B. As set forth in detail above, the Settlement Agreement contemplates a notice plan that provides individual direct mail notice, which is designed to reach as many potential individuals in the Settlement Class as possible. The direct notice process should be very effective at reaching the Settlement Class Members given the relationship between Defendants and the Settlement Class Members (patients or former patients) where Defendants generally do not have email contact information for Settlement Class Members. *See Burnett v. Conseco Life Insurance Company*, No. 1:18-cv-00200, 2020 WL 4207787 (S.D. Ind. July 22, 2020) (approving notice plan with mail and email components). The proposed Notices and Claim Form are attached to the Settlement Agreement (Exhibit 1) as Exhibits 1-A-1-C and should be approved by the Court.

## V.    <u>CONCLUSION</u>

For the reasons described above, Plaintiff respectfully requests that the Court enter a Preliminary Approval Order, which (1) schedules a fairness hearing on the question of whether the proposed class action settlement should be approved as fair, reasonable, and adequate; (2) approves the form and content of the proposed Notice to the Settlement Class; (3) approves the form and content of the proposed Claim Form; (4) approves the proposed method of requesting exclusion from the Settlement; (5) directs Notice to be carried out as described in the Settlement Agreement; (6) preliminarily approves the Settlement; and (7) preliminarily certifies the Settlement Class for purposes of settlement only.

Date: July 5, 2024                    Respectfully Submitted,

*/s/ Carl V. Malmstrom*
Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
111 West Jackson Boulevard, Suite 1700
Chicago, IL 60604-3597
Email: malmstrom@whafh.com

*Counsel for Plaintiff and the Proposed Class*