UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SEAN SHEFFLER individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1:23-cv-01206-SEB-TAB ) |
| ACTIVATE HEALTHCARE, LLC, EVERSIDE HEALTH, LLC, | ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Sean Sheffler ("Mr. Sheffler") brought this putative class action against Defendants Activate Healthcare, LLC ("Activate") and Everside Health, LLC ("Everside") (collectively, "Defendants") for a data breach that allegedly affected Defendants' IT networks and compromised Mr. Sheffler's and others' Sensitive Personal Information ("SPI").[1] Now before the Court is Mr. Sheffler's Unopposed Motion for Preliminary Approval of Class Action Settlement, dkt. 44. For the reasons explained below, Mr. Sheffler's unopposed motion is **GRANTED**.

---

[1] The parties define SPI as "patient names, dates of birth, address, Social Security number, driver's license number, and clinical information, such as provider name, date of service, and/or diagnosis." Dkt. 4 at 1 n.2.

1

## BACKGROUND

### I. Factual Background

Activate and Everside are healthcare companies that provide a variety of health-related services, such as drug screenings, for both employers and labor unions. Mr. Sheffler as well as members of the proposed class are employees, prospective employees, and union members who utilized Defendants' services, (typically) at the direction of their employers or unions. In the ordinary course of business, Defendants collect users' SPI.

In April 2023, Defendants discovered that an unauthorized user had accessed their databases and exfiltrated the SPI of approximately 113,872 individuals. After the "Data Incident" occurred, Mr. Sheffler began receiving "repeated calls from scammers and other individuals attempting to solicit money from him." Dkt. 44 at 2. Thus, he avers that his SPI "was transmitted to others via the dark web." *Id.*

### II. Procedural Background

On July 8, 2023, Mr. Sheffler filed this putative class action against Activate based on the alleged exfiltration of SPI from its database. Mr. Sheffler amended his pleadings on August 1, 2023, and again on October 12, 2023, each of which Activate (then the only named Defendant) moved to dismiss accordingly.

On April 11, 2024, Mr. Sheffler and Defendants participated in a mediation conducted by Bruce Friedman, Esq. ("Mediator Friedman"), an "experienced and respected JAMS mediator with extensive experience in class action mediation generally and data breach mediations in particular." Dkt. 44 at 3. Following the significant exchange of information and a full day of arms'-length negotiations, the parties reached an agreement.

On April 23, 2024, the parties notified the Court of their agreement to a settlement in principle and jointly moved to stay proceedings as they finalized the details of their settlement agreement. Over the course of the following weeks, the parties negotiated, drafted, and finalized the terms of their settlement agreement and notice forms and selected a claims process and administrator. Meanwhile, on June 3, 2024, Mr. Sheffler filed the operative complaint, adding Everside as a Defendant and asserting on behalf of a nationwide class the following claims: (i) negligence; (ii) breach of implied contract; (iii) breach of third-party beneficiary contract; (iv) bailment; and (v) unjust enrichment. Third Am. Compl. 17, 21, 23, 25–26, dkt. 38. Mr. Sheffler also sought certification of a single national class as well as state-specific subclasses. *Id.* ¶¶ 83–147.

The parties finalized and signed the Settlement Agreement in July 2024. On July 5, 2024, Mr. Sheffler filed the instant unopposed motion for preliminary approval of the class action settlement. Dkt. 44.

### III.   Summary of the Settlement Agreement

The parties agreed to settle this case on the terms and conditions set forth in the Settlement Agreement, recognizing that the complex nature of the underlying claims renders the outcome of the case uncertain and that further litigation would involve substantial risk as well as significant time and expense. The parties agree that the Settlement Agreement shall not be construed as an admission by Defendants of any wrongdoing whatsoever.

The Settlement Class (the "Class") is defined as follows:

> [A]ll individuals notified that their SPI was potentially impacted in the Data Incident at issue in the [operative complaint]. Defendants' officers and directors are excluded from the Settlement Class, as well as (i) all Settlement Class

    Members who timely and validly request exclusion from the Settlement Class; (ii) the judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this Settlement; and (iii) any other person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

*Id.* at 10–11. In exchange for this monetary relief, Class Members agree to release any and all causes of action arising out of the Data Incident, including those set forth in the operative pleading.

  The Settlement Agreement requires Defendants to establish a non-reversionary settlement fund of $550,000.00 to satisfy monetary claims, attorneys' fees and costs, costs of settlement administration, and Mr. Sheffler's service award. Dkt. 45-1 at 12. The settlement fund will be distributed as follows:

- <u>Class Members</u>: Qualifying Class Members may seek up to $250.00 in reimbursement for documented out-of-pocket expenses, such as credit monitoring or identity theft insurance purchased after June 23, 2023. *Id.* at 17–18. Any portion of the Settlement Fund remaining after payment of attorneys' fees, costs, claims administration and Mr. Sheffler's service award shall be divided on a *pro rata* basis among all Class Members who file timely claims for a cash payment benefit (regardless of whether they also sought reimbursement for out-of-pocket expenses). At this preliminary stage, the estimated *pro rata* share for each Class Member is approximately $50.00. *Id.*

- <u>Claims Administrator</u>: The Claims Administrator will be reimbursed no more than $91,242.00 for the expenses incurred in administering the settlement fund, including, but not limited to, issuing notice to Class Members, processing claims, and calculating and disbursing settlement proceeds.

- <u>Class Counsel</u>: Class Counsel Carl Malmstrom of Wolf Haldenstein Adler Freeman & Herz LLP will request court approval for an award of reasonable attorneys' fees incurred in prosecuting this matter in an amount not to exceed one-third of the Settlement Fund balance after administration costs are deducted.

Following a competitive bidding process, the parties selected Analytics, LLC ("Analytics"), the lowest bidder, as their claims administrator responsible for administering notice of this class action lawsuit to all Class Members and processing claims. The proposed notice plan directs Analytics, within thirty days of the Settlement Agreement's preliminary approval, to send by first class mail a summary notice postcard to each Class Member's last-known address. Analytics will also create and maintain a settlement webpage that will provide all court-approved notice forms as well as the Settlement Agreement, copies of the motion for final approval, and copies of the motion for attorneys' fees and expenses award. Although not required by the terms of the Settlement Agreement, Analytics will also establish a toll-free help line to assist Class Members with their settlement-related questions.

After notice of the class action settlement is issued, Class Members have ninety (90) days to complete a claim form, which can be submitted to Analytics either by mail or online. Class Members will have sixty (60) days after notice is issued to opt-out or object to the Settlement Agreement.

Analytics, as the claims administrator, is responsible for reviewing and determining the validity of submitted claim forms and calculating the monetary award for each Class Member. If a claim form is incomplete or otherwise deficient, Analytics will provide the claimant twenty-one (21) days to cure such defects before rejecting the settlement claim.

Analytics will issue award checks or send funds electronically (through an electronic payment format, such as PayPal, as recommended by Analytics and agreed upon by the parties). In the event that any balance remains after the claims process has expired,

Analytics will, on the agreement of the parties, issue a secondary distribution to Class Members or remit the residue to a *cy pres* recipient to be approved by the Court.

Class Members seeking to object to or opt-out from the Settlement Agreement will have up to and including sixty days from the date that notice is issued. The sixty-day allotment is intended to provide Class Members sufficient time to access and review information relevant to this lawsuit, including Plaintiff's (anticipated) motion for attorneys' fees, costs, and service award, which will be filed fourteen days before the sixty-day objection/opt-out window closes.

Class Members who wish to exclude themselves from the Settlement Agreement must individually and timely mail a written opt-out form to the address designated by Analytics. All persons who opt-out from this settlement shall not receive any benefits of or be bound by the terms of the Settlement Agreement. Qualifying Class Members who do not opt-out will be bound by the terms set forth in the Settlement Agreement.

Objecting Class Members must file a notice of their intent to object, which notice must include: (i) the objector's full name, address, and telephone number; (ii) the objector's "personal and original signature"; (iii) a statement reflecting the Class Member's objection to the Settlement Agreement, in whole or in part; (iv) a statement setting forth the factual and legal basis for the objection; (v) copies of any documents that the Class Member contends support such objection; and (vi) a list of all persons who will be called to testify at the final fairness hearing with regard to the objection.[2] Dkt. 45-1 at 26. Objections "should

---

[2] For reasons unclear to us, Mr. Sheffler omitted from his summary of these requirements item (iii) but added requirements that an objecting Class Member's notice include "information identifying

6

also" include a list containing the case name, court, and docket number of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last three years as well as any class action cases in which the objector has been a named plaintiff or served as a lead plaintiff or class representative. *Id.* These objections must be filed with the Court and served to Class Counsel and Defense Counsel.

Mr. Sheffler, as the representative plaintiff, shall receive a service award in the amount of $5,000.00 to compensate him for his efforts on behalf of the Class, including maintaining contact with counsel, assisting in the investigation of this case, reviewing the pleadings, remaining available for consultation during the mediation and settlement negotiations, reviewing the Settlement Agreement, and responding to counsel's inquiries.

Counsel for Plaintiff, who is also designated as Class Counsel, may seek reasonable attorneys' fees and costs incurred in prosecuting this case in an amount no greater than one-third of the Settlement Fund after administration costs are deducted. Class Counsel will submit a separate motion for attorneys' fees, costs, and Plaintiff's service award prior to moving for final approval of the Settlement Agreement and prior to Class Members' deadline to opt-out and/or exclude themselves from the disposition of this case.

---

the objector as a Settlement Class Member," "the identity of any counsel representing the objector," and "a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel"—none of which appear in the text of the Settlement Agreement's objection procedure. Dkt. 45 at 8.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements that effect the dismissal of the lawsuit. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). Even when parties jointly seek preliminary approval of a class-action settlement, the district court must undertake and satisfy three inquiries. *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083–84 (N.D. Ill. 2021).

First, the district court must determine whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). In the settlement context, where "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class," Rule 23 "protect[s] absentees by blocking unwarranted or overbroad class definitions" and "demand[s] undiluted, even heightened, attention . . . ." *Amchem Prod., Inc. v. Winsdor*, 521 U.S. 591, 620 (1997).

Second, the district court must find that the settlement proposal is "within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). A court may finally approve a proposed settlement "only after a hearing and only on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). At the preliminary approval stage, however, the court need only "ascertain whether there is any reason to notify the class members of the proposed settlement [before] proceed[ing] with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). In determining whether a proposed class-action settlement falls within the range of possible approval, "courts in this district have tended to perform a more summary version of the final fairness inquiry . . . ." *In re TikTok*, 565 F. Supp. 3d at 1087 (internal quotation and citation omitted).

Third, upon finding that class certification is likely and that the proposed settlement is within the range of possible approval, the district court directs the parties to issue notice "in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1); *Edwards v. Educ. Mgmt. Corp.*, No. 1:18-cv-03170-RLY-DLP, 2022 WL 3213277, at *2 (S.D. Ind. June 13, 2022).

## DISCUSSION

### I. Settlement Class Certification

The parties seek to certify a settlement class defined as:

> All natural persons residing in the United States whose SPI was compromised in the Data Breach announced by Defendants on or about June 23, 2023.

Dkt. 45 at 9.

Rule 23(a) sets forth the criteria for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Rule 23(b)(3) further requires the court to conclude that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Where, such as here, the litigants have reached a preliminary settlement agreement, the court must still undertake an independent class certification analysis so as to

ensure that the proposed settlement class "protect[s] absentees by blocking unwarranted or overbroad class definitions." *Amchem*, 521 U.S. at 619–22.

Numerosity: Rule 23(a) mandates that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). Defendants estimate that the Data Incident affected approximately 113,872 individuals. The numerosity criterion is therefore satisfied.

Commonality: The commonality inquiry asks whether "the class members 'have suffered the same injury.' " *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Such injury must "depend upon a common contention . . . capable of class wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Under Rule 23, "a single common question will do." *Id.* at 359 (cleaned up). Here, the commonality requirement is met, as the claims asserted herein similarly challenge the adequacy of the safeguards used by Defendants to store and maintain Mr. Sheffler's and other Class Members' SPI. (Such safeguards, we are told, did not differ from one Class member to another.) *In re Heartland Payment Sys., Inc. v. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) (commonality element met where inquiry was about actions taken by a defendant before, during, and after a data breach).

<u>Typicality</u>: Although closely related to the commonality element, typicality requires that the class representative's claims share the same essential characteristics as those of the putative class. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 593 (7th Cir. 1993). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation and internal punctuation omitted). In other words, typicality is "generally met" when the defendant has engaged "in a standardized course of conduct vis-à-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Hinman v. M & M Rental Center*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008). The typicality requirement is satisfied here, as all claims arise out of the same course of conduct—Defendants' collection and maintenance of Mr. Sheffler's and Class Members' SPI, which was subsequently subject to the Data Incident.

<u>Adequacy of Representation</u>: District courts must also ensure that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequate representation inquiry is two-fold: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011). Both prongs are satisfied here. Mr. Sheffler, as the Class representative, suffered the same alleged injury, based on the same alleged data breach, as all other members of the proposed Class. He has further agreed to undertake the responsibilities of a class representative and

has sworn to continue acting in the Class's best interest. Likewise, Class counsel Carl Malmstrom of Wolf Haldenstein Adler Freeman & Herz LLP, a Chicago law firm, has more than fifteen years of experience litigating complex class actions in several practice areas, including antitrust, consumer fraud, and data security. He is well-suited to advocate on the Class's behalf, as demonstrated, in part, by his having successfully negotiated the instant settlement with Activate, which has vigorously contested liability.

Predominance & Superiority: Rule 23(b)(3) imposes two final requirements for class certification: that common questions of law or fact predominate over questions affecting only individual members; and that class resolution is the superior means to adjudicate the controversy fairly and efficiently. The predominance criterion is met where " 'a failure of proof on the [common question] would end the case' and the whole class 'will prevail or fail in unison.' " *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)). The common question that predominates in this case is whether Defendants' adequately protected Mr. Sheffler's and Class Members' SPI.

A class action is also superior to other forms of adjudication because it is the only realistic means through which Class Members can obtain relief for Defendants' alleged failure to protect their SPI. The anticipated monetary award for each Class Member is approximately $50.00, not including up to $250.00 reimbursement for out-of-pocket expenses. The costs of litigation alone—which would include, for example, experts in complex technology—diminish potential recovery on an individual basis.

In sum, the Court will likely be able to certify the proposed Class for purposes of a judgment on the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B)(ii).[3]

## II. Preliminary Settlement Approval

We turn next to whether the proposed settlement is "within the range of possible approval" with regard to its fairness, reasonableness, and adequacy. "Federal courts naturally favor the settlement of class action litigation," *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996), in no small part because settlement "minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources," *In re AT & T Mobility Wireless Data Servs. Sales Litig*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). Nonetheless, district courts "must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds*, 288 F.3d at 279. District judges accordingly "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions," particularly in light of "the risk that attorneys for the class will 'place their pecuniary interest ahead of that of the class.' " *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 283 (7th Cir. 2017) (quoting *Reynolds*, 288 F.3d at 279).

The following factors inform our analysis of the Settlement Agreement's fairness: (1) the strength of the plaintiff's case on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the opinion of competent counsel; and (5) the stage of

---

[3] Although Mr. Sheffler pleaded that he would seek certification of state-specific subclasses, none have been proposed.

the proceedings and the amount of discovery completed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). We evaluate each factor in turn.

      <u>Strength of Plaintiff's Case</u>: "The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). "[W]hen the proposed settlement evinces certain warning signs" of potential collusion, the Seventh Circuit advises district courts to "take special care in performing this assessment." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011).

      Most recently, the Seventh Circuit has advised that the "evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *Kaufman*, 877 F.3d at 285. For example, in *Wong v. Accretive Health, Inc.*, the Seventh Circuit affirmed the district court's approval of a class action settlement where "[t]he settlement was reached through extensive arms'-length negotiations with an experienced third-party mediator" and "the parties contentiously litigated a motion to dismiss . . . ." 773 F.3d at 684.

      The case at bar bears these reliable indicators of a reasonable, mediated settlement. *In re TikTok*, 565 F. Supp. 3d at 1088. The Settlement Agreement was the product of a full day of arms'-length mediation with Mediator Friedman, a respected JAMS mediator with extensive experience in class actions and data breach litigation. After reaching a settlement in principle, the parties diligently negotiated, drafted, and finalized the terms of the Settlement Agreement and notice forms and also agreed on a claims process and a claims

14

administrator. Furthermore, Activate has "forcefully disputed" its liability, "raising a host of factual and legal defenses" in two pending motions to dismiss, which indicate Activate's readiness to vigorously contest this lawsuit. *Id.* Given the indicia of reliability presented herein, we "need not undertake the type of mechanical mathematic valuation exercise" otherwise required to preliminarily approve a class action settlement. *In re TikTok*, 565 F. Supp. 3d at 1088. At this juncture, we "need only recognize that the proposed settlement ensures meaningful" relief for the Class and "weigh those benefits against the substantial risks that [the Class] would face in seeking a better outcome at trial." *Id.*

The strength of Plaintiff's case compared to Defendants' settlement offer readily weighs in favor of preliminary approval. "Further litigation almost certainly would . . . involve[ ] complex and lengthy discovery and expert testimony." *Wong*, 773 F.3d at 684. Continued litigation would almost certainly pose significant risks and costs on Mr. Sheffler—the most significant risk being the possibility that he would not prevail. "Even if [Mr. Sheffler] were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money . . . ." *In re AT & T*, 270 F.R.D. at 347. The proposed Settlement Agreement provides for the establishment of a non-reversionary Settlement Fund, none of which will revert to Defendants. Additionally, eligible Class Members can receive up to $250.00 reimbursement for credit monitoring expenses incurred because of the Data Incident as well as a *pro rata* monetary award currently estimated at approximately $50.00 per Class Member. *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (PAM), 2017 WL 2178306, at *2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving

class action settlement in data breach lawsuit authorizing $40.00 recovery for class members in addition to reimbursement for credit monitoring expenses). Accordingly, we conclude that the strength of Plaintiff's case demonstrates the fairness, reasonableness, and adequacy of the proposed Settlement Agreement.

  <u>Complexity, Length, and Expense</u>: The likely complexity, length, and expense of continued litigation also support preliminarily approving the Settlement Agreement. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 585–86 (N.D. Ill. 2011). With preliminary approval of the Settlement Agreement, "the present lawsuit will come to an end and Class Members will realize both immediate and future benefits as a result." *Id.* Without approval of the Settlement Agreement, Mr. Sheffler would incur substantial expenses in discovery on class certification and further motion practice—all of which would "increase time and expense and could reduce or eliminate the recovery" otherwise available under the Settlement Agreement. *Edwards*, 2022 WL 3213277, at *6. This factor therefore weighs in favor of preliminary approval.

  <u>Opposition to Proposed Settlement</u>: At this time, there is no known opposition to the proposed Settlement Agreement, as notice has not yet been issued to Class Members. Accordingly, this factor does not weigh for or against preliminary approval.

  <u>Opinion of Competent Counsel</u>: District courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634 (citations omitted). Here, Class Counsel maintains that the Settlement Agreement is fair, reasonable, adequate, and in the Class's best interest. Given Class Counsel's extensive experience in data breach litigation, we will "not substitute [our] own judgment as to optimal settlement terms for the judgment

16

of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. This factor, we conclude, weighs in favor of preliminary approval.

Stage of Proceedings: "The stage of the proceedings at which settlement is reached . . . indicates how fully the district court and counsel are able to evaluate the merits of [the] claims." *Id.* at 325. The parties here settled only after both sides were fully apprised of the facts, risks, and obstacles involved in further litigation. During mediation, the parties exchanged information sufficient for counsel to evaluate the merits of the instant lawsuit and to engage in meaningful settlement discussions. At this stage, "the court is not convinced that extensive formal discovery, when measured against the cost that would be incurred, would place the parties in a proportionally better position than they are now to determine an appropriate settlement value of this litigation." *In re Cap. One Tel. Consumer Prot. Act. Litig.*, 80 F. Supp. 3d 781, 792–93 (N.D. Ill. 2015). This final factor weighs in favor of settlement.

## III. Class Notice

Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) further provides as follows:

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The best practicable notice "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The proposed notice satisfies Rule 23's requirements and provides notice to Class Members of the proposed Settlement Agreement. The notice plan contemplated by the Settlement Agreement provides for notice by First Class U.S. mail, which is designed to reach as many potential Class Members as possible. Notice of the Settlement Agreement will also be published on a website created and maintained by Analytics.

The proposed notice also describes the nature of the pending action, dkt. 45-1 at 48, 51, 57, outlines the settlement terms, *id.* at 48, 52, 57, informs Class Members about Class Counsel's compensation, *id.* at 53, explains how Class Members may either opt-out or object, *id.* at 49, 53–54, 57, and provides (placeholders for) specific information about the time and place of the final approval hearing, *id.* at 55, 57. *See Burnett v. Conseco Life Ins. Co.*, No. 1:18-cv-00200, 2020 WL 4207787, at * 11 (S.D. Ind. July 22, 2020).

As explained above, the proposed notice satisfies the requirements of Rule 23 and is approved accordingly.

## CONCLUSION

Based on the forgoing, Plaintiff's Unopposed Motion for Preliminary Class Action Settlement Approval, dkt. 44, is **GRANTED** as follows:

- The Court preliminarily **CERTIFIES**, for settlement purposes only, the following Class, as set forth in the Settlement Agreement: All natural persons residing

    in the United States whose SPI was compromised in the Data Breach announced by Defendants on or about June 23, 2023.

- The Court preliminarily **APPROVES** the Settlement Agreement as fair, reasonable, and adequate.

- The Court **APPROVES** the proposed notice, claim form, and opt-out procedure as well as the appointment of Mr. Sheffler as Class Representative, Analytics as Claims Administrator, and Carl Malmstrom as Class Counsel.

- The Court **DIRECTS** notice to be issued in the manner described in the Settlement Agreement.

- In accordance with the Settlement Agreement, the Court hereby **ADOPTS** the following timeline:

| Event | Date |
|---|---|
| Mailing of Class Notice | 30 days after entry of this Order |
| Claims Deadline | 90 days after date of notice |
| Opt-out Deadline | 60 days after date of notice |
| Objection Deadline | 60 days after date of notice |

- Pending the Court's ruling on final approval of the Settlement Agreement, this matter is **STAYED** other than as set forth herein.

- Pending final approval of the Settlement Agreement, all Class Members are preliminarily barred and enjoined, pursuant to Federal Rule of Civil Procedure 65, from initiating any claim, suit, or proceedings against Defendants with respect to any claim subject to the proposed Settlement Agreement.

The Court will set a date and time for a final approval hearing, and a briefing schedule for the same, by separate order.

Additionally, Activate's Motions to Dismiss, dkt. 19, 28, and Motions for Oral Argument, dkt. 21, 30, are **DENIED** as moot.

The Clerk is **DIRECTED** to correct the spelling of "similarly" in the case caption.

IT IS SO ORDERED.

Date: 8/30/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Bonnie Keane DelGobbo
BAKER & HOSTETLER LLP
bdelgobbo@bakerlaw.com

Chelsea Lamb
Baker & Hostetler LLP
clamb@bakerlaw.com

Carl Vincent Malmstrom
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
malmstrom@whafh.com

Christopher Wiech
Baker & Hostetler LLP
cwiech@bakerlaw.com